## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Akeem Adebayo Soboyede, | Case No. 20-cv-02196 (SRN/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| KLDiscovery, | |
| Defendant. | |

Akeem Adebayo Soboyede, Akeem Soboyede Law Office, PLLC, 8400 Normandale Lake Boulevard #920, Minneapolis, MN 55437, Pro Se.

Thomas R. Revnew and Corie J. Anderson, Peters, Revnew, Kappenman & Anderson, P.A., 7300 Metro Boulevard, Suite 500, Minneapolis, MN 55439, for Defendant.

Christine M. Burke, Lorenger & Carnell PLC, 651 South Washington Street, Alexandria, Virginia 22314, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter comes before the Court on Defendant KLDiscovery's ("KLD") Motion to Dismiss the Complaint ("Motion to Dismiss") [Doc. No. 8] under Federal Rule of Civil Procedure 12(b)(6). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motion.

## I.      BACKGROUND

### A.  The Parties

Plaintiff Akeem Soboyede is a resident of Minnesota, a dual-national of the United States and Nigeria, and was born in Nigeria. (Not. of Removal [Doc. No. 1] Ex. A

("Compl.") ¶¶ 3, 22.) He is an attorney licensed in Minnesota and the District of Columbia, and has experience performing legal document review work. (*Id.* ¶¶ 9-10.)

Defendant KLD is a company that conducts business in Minnesota, providing electronic discovery services to law firms, corporations, and government agencies. (*Id.* ¶ 4.)

### B. Soboyede's 2014 Interview and Subsequent Interactions with KLD

In August 2014, Soboyede interviewed with KLD for a position on a legal document review project. (*Id.* ¶ 11.) He alleges that the KLD employee conducting the interview, Ardith Denzer, "casually" asked him about which country he was "originally from" and the "origin" of his accent. (*Id.*) Soboyede alleges that he answered these questions. (*Id.*)

After this interview, Soboyede alleges that KLD never hired him for any document review projects until July 2017. (*Id.* ¶ 12.) From August 2014 through July 2017, he continued to apply for the same or similar positions with KLD, and "routinely contacted" KLD—including Denzer—to tell them that he was available for work. (*Id.* ¶ 13.) According to Soboyede, Denzer "always" responded that KLD had no projects for which it could hire him. (*Id.*) However, during this same period, KLD advertised "hundreds" of legal document review positions. (*Id.*) He further alleges that KLD has claimed that it has no record of any communication between him and Denzer or any other members of KLD's human resources staff from August 2014 through July 2017. (*Id.* ¶ 14.)

In July 2017, Soboyede told one of KLD's recruiters that he had not been offered a document review position with KLD since he began seeking one in August 2014 and that he planned to file employment discrimination charges with the appropriate state and federal

2

agencies. (*Id.* ¶ 15.) He alleges that a "few days later" KLD offered him a position on a document review project. (*Id.*) According to Soboyede, KLD told him that this project would last at least two weeks, and that there would be a strong possibility that he would be "rolled over" into other projects once the first project concluded. (*Id.*)

However, "barely a week into" this project, in July 2017, Soboyede alleges that KLD engaged in a "series of retaliatory activities" intended to "illegally disparage [his] ability and competence as an attorney" and "reinforce the acts of employment discrimination" that prevented him from being hired from August 2014 through July 2017. (*Id.* ¶ 16.) After working on this document review project for about one week, Soboyede alleges that KLD discharged him from it and that KLD "acted with discriminatory animus" in doing so. (*Id.* ¶ 17.) Soboyede does not specifically allege what the "series of retaliatory activities" was, although it appears that it includes his discharge. (*See id.* ¶¶ 16-17.) According to Soboyede, other document review attorneys—who were "similarly-situated" and shared similar qualifications to him—continued to work on this project. (*Id.* ¶ 17.)

Shortly after his discharge, Soboyede alleges that he told several of KLD's employees that he "would be seeking redress with state and federal employment discrimination enforcement agencies" regarding KLD's actions against him. (*Id.* ¶ 18.) Further, after his discharge, he alleges that he continued to seek employment from KLD, but that KLD has not offered him any other position. (*Id.* ¶¶ 19-20.)

### C. Soboyede's Administrative Filings

On February 28, 2018, Soboyede filed a charge of discrimination with the Minnesota Department of Human Rights ("MDHR"), alleging that KLD discriminated

against him based on his national origin in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.08, subd. 2(1) ("MHRA"). (*Id.* ¶ 7; *see* Pl.'s Index of Exs. [Doc. No. 17] Ex. 1 ("February 2018 Charge").) He cross-filed this charge with the Equal Employment Opportunity Commission ("EEOC"). (*See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") [Doc. No. 10] Ex. 2.) In this charge, he explains that, during the August 2014 interview, KLD's Denzer asked him where he "came from originally" and that she made a written note of his response. (*See* February 2018 Charge.) He then explains that on November 20, 2017, he applied for a position with KLD but received no response, "just as [KLD] ignored [his] previous applications and emails regarding [his] availability for projects." (*See id.*) Soboyede provided three reasons in support of his contention that KLD refused to hire him based on his national origin: (1) Denzer asked him in his August 2014 interview where he came from; (2) she wrote down his response to this question; and (3) KLD then refused to employ him or respond to his employment inquiries. (*Id.*)

In September 2018, Soboyede amended his February 2018 Charge. (*See* Pl.'s Index of Exs. [Doc. No. 17] Ex. 2 ("Amended Charge").) In the Amended Charge, he retained his original allegations but made several additions. First, he alleged that his "complaints of discrimination" were also a factor in KLD's refusal to hire him. (*Id.*) Second, he added a claim of reprisal under the MHRA, Minn. Stat. § 363A.15. (*Id.*; *see* Compl. ¶ 7.)

On June 22, 2020, the MDHR issued a no probable cause determination and gave Soboyede a right-to-sue letter. (Compl. ¶ 8; *see* Def.'s Mem., Ex. 4.) Soboyede appealed the MDHR's determination, and the MDHR affirmed its dismissal on August 17, 2020. (Def.'s Mem., Ex. 5.)

On November 25, 2020, the EEOC adopted the findings of the MDHR and issued a right-to-sue letter to Soboyede. (*See* Pl.'s Supplemental Index of Exs. [Doc. No. 19] Ex. 4.)

## II.    PROCEDURAL HISTORY

On September 30, 2020, Plaintiff commenced this action in Minnesota state court, bringing several claims against KLD. (*See* Not. of Removal [Doc. No. 1] ¶ 1.) He alleges national origin discrimination, reprisal and retaliation under: (1) 42 U.S.C. §§ 1981 and 1982; (2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; and (3) the MHRA, Minn. Stat. § 363A, *et seq.* (Compl. ¶¶ 11-26.) He also seeks an award of punitive damages. (*Id.*)

On October 20, 2020, KLD removed the action to federal court under 28 U.S.C. §§ 1441 and 1446. (Not. of Removal ¶¶ 4-7.) On October 27, 2020, KLD moved to dismiss all claims in the complaint under Federal Rule of Civil Procedure 12(b)(6).

## III.   DISCUSSION

### A.  Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain

"detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

On a motion to dismiss, a district court may consider the complaint, exhibits attached to the complaint, and documents that are necessarily embraced by the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Materials necessarily embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 998 (8th Cir. 2016) (citation omitted).

Here, in deciding the instant motion, the Court considers the MDHR and EEOC charge documents, letters finding no probable cause, and right-to-sue letters because they are necessarily embraced by the complaint. *See Ordahl v. Toro*, No. 14-1687(DSD/HB), 2015 U.S. Dist. LEXIS 98152, at *4 (D. Minn. July 28, 2015); *Marz v. Presbyterian Homes & Servs.*, 2011 U.S. Dist. LEXIS 78712, at *2-3 (D. Minn. June 22, 2011); *see also* Compl. ¶¶ 7-8.

### B. National Origin Discrimination

First, Soboyede alleges that KLD discriminated against him based on his national origin in violation of §§ 1981 and 1982, Title VII, and the MHRA.[1] (*See* Compl. ¶¶ 11-14.) The Court considers in turn whether he states a claim under each of these statutes.

---

[1] The Court notes that the parties debate whether Soboyede's service of process was deficient based on an allegedly incorrect deadline to respond listed on the summons. For purposes of the Court's analysis, the Court assumes that Soboyede's service of process was proper.

### 1.    Section 1981

Section 1981 protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011) (quoting *St. Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 613 (1987)). "Section 1981 does not authorize discrimination claims based on national origin." *Id.* at 1053 (citing *Zar v. S.D. Bd. of Exam'rs of Psychologists*, 976 F.2d 459, 467 (8th Cir. 1992)).

Here, Soboyede bases his claim on his Nigerian national origin only. KLD contends that Soboyede's § 1981 claim must be dismissed because that statute does not authorize claims based on national origin. (*See* Def.'s Mem. at 12-15.) The Court agrees with KLD. Indeed, *Torgenson* plainly instructs that claims based on national origin are not authorized under § 1981. Consequently, because Soboyede "alleges he was discriminated against based on national origin," "his § 1981 claim fails." *See Torgerson*, 643 F.3d at 1052.

### 2.    Section 1982

Section 1982 provides that "[a]ll citizens of the United States shall have the same right … as is enjoyed by white citizens … to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. It does not prohibit "discrimination on the basis of national origin." *Mwangi v. Braegelmann*, No. 09-3396, 2011 U.S. Dist. LEXIS 52391, at *6 (D. Minn. May 16, 2011) (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968)).

KLD contends that, like Soboyede's § 1981 claim, his § 1982 claim must be dismissed because § 1982, too, does not authorize claims based on national origin. (*See*

Def.'s Mem. at 10-12.) The Court agrees. Because § 1982 does not authorize claims based on national origin, the Court dismisses his § 1982 claim. *See Jones*, 392 U.S. at 413.

### 3.      Title VII

KLD contends that Soboyede's Title VII claim must be dismissed because he failed to exhaust his administrative remedies and, even if he did, he fails to state a claim. A Title VII plaintiff must exhaust his administrative remedies before filing suit in federal court. *See Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996). To exhaust his remedies, the Title VII plaintiff must: (1) timely file his charges with the EEOC; and (2) receive a "right-to-sue" letter from the EEOC. *Id.* (citing 42 U.S.C. § 2000e-5(b), (c), (e)). "The proper exhaustion of administrative remedies gives the plaintiff a green light to bring [his or] her employment-discrimination claim, along with allegations that are like or reasonably related to that claim, in federal court." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (citing *Shannon*, 72 F.3d at 684). Although courts "liberally construe" administrative charges for exhaustion purposes, "there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." *Id.* Claims of employment discrimination in a complaint "may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Id.* (citation omitted).

KLD contends that Soboyede's Title VII claim fails because the allegations in the complaint differ from those in the charge. (Def.'s Mem. at 7-8.) KLD notes that the Amended Charge alleges refusals to hire in connection with Soboyede's August 2014 interview and November 2017 job application. But in his complaint, according to KLD,

8

Soboyede alleges that he continuously sought a position between August 2014 and July 2017, was hired in July 2017, and was discharged shortly thereafter. In response, Soboyede asserts that his allegations in the Amended Charge are reasonably related to his allegations in the complaint that he continuously sought a job with KLD from August 2014 through July 2017 and was discriminated against in his discharge. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") [Doc. No. 15] at 12-14.)[2] He also notes that his Amended Charge stated that KLD "ignored [his] previous applications and emails regarding [his] availability for projects with [KLD]."

Here, Soboyede's Amended Charge only raises claims of refusals to hire. It does not mention that KLD hired Soboyede nor that KLD discharged Soboyede. Because terminations and refusals to hire are discrete employment actions, "it is not reasonable to expect the EEOC to look for and investigate such adverse employment actions if they are nowhere mentioned in the administrative charge." *Parisi*, 400 F.3d at 586. Consequently, to the extent Soboyede contends that his discharge was discriminatory, that claim is "not like or reasonably related to the claims in his administrative charge," and therefore has not been exhausted. *Id.*

Further, under Title VII, an employee aggrieved by an unlawful employment practice generally must file a charge with the EEOC within 300 days "after the alleged

---

[2] The Court notes that Soboyede filed his memorandum in opposition to KLD's motion to dismiss as a "Counter Motion to Dismiss." Because Soboyede only responds to KLD's motion and does not move to dismiss any claims in this filing, the Court denies Soboyede's "Counter Motion to Dismiss," but it construes this filing as his memorandum in opposition.

unlawful employment practice occurred." *Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 825-26 (8th Cir. 2009) (quoting 42 U.S.C. § 2000e-5(e)(1)). A "refusal to hire" is a "single, discrete act, not a continuing violation." *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 842 (8th Cir. 2002); *accord AMTRAK v. Morgan*, 536 U.S. 101, 114 (2002) (noting that the "termination of an employee, failure to promote, denial of transfer, or refusal to hire" are discrete discriminatory acts, each of which starts a new clock for filing charges alleging that act).

KLD notes that Soboyede filed his initial charge on February 28, 2018 and, consequently, any claims relating to any events that occurred before May 4, 2017 are time-barred. (Def.'s Mem. at 8.) In response, Soboyede contends that the entirety of his Title VII claim is timely for three reasons: (1) KLD was engaging in "continuing acts of discrimination"; (2) any denials of employment that occurred before the 300-day period are "reasonably related" to the more recent alleged denials of employment; and (3) equitable tolling or equitable estoppel apply. (Pl.'s Opp'n at 18-20.)

Here, Soboyede filed his initial charge on February 28, 2018. Because Title VII requires him to file a charge within 300 days after an allegedly unlawful employment practice occurred, any alleged refusals to hire that occurred before May 4, 2017 are time-barred, including the alleged refusal to hire in August 2014.

None of Soboyede's arguments change this result. First, when a plaintiff alleges a series of separate acts that form an unlawful employment practice, acts occurring outside of the statute of limitations period can be timely if there is at least one act within the limitations period. *See Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 327 F.3d

10

771, 784 (8th Cir. 2003). Here, however, the refusals to hire that Soboyede alleges are not subject to this doctrine because refusals to hire are discrete acts, not continuing violations. *See id.* at 785; *Woodland*, 302 F.3d at 842. Second, Soboyede's invocation of the "reasonable relationship" doctrine does not help him because that doctrine relates to whether claims in a complaint are encompassed within an administrative charge, not whether a claim is timely. Third, and finally, the Court finds no basis upon which to apply equitable tolling or equitable estoppel in this case.

In light of the above, the only Title VII discrimination claims properly before the Court appear to be any alleged refusals to hire occurring on or after May 4, 2017. The Court now considers whether Soboyede states such a claim.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … national origin." 42 U.S.C. § 2000e-2(a). To survive a motion to dismiss, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (citation and internal quotation marks omitted). A complaint "does not need to contain specific facts establishing a prima facie case to survive a motion to dismiss for failure to state a claim." *Von Bokel v. McHugh*, No. 4:13-CV-2517 CAS, 2015 U.S. Dist. LEXIS 8847, at *14 (E.D. Mo. Jan. 27, 2015). However, the elements of a prima facie can inform whether a plaintiff has stated a plausible claim. *Id.* To make a prima facie case of Title VII discrimination, a plaintiff must show that he "(1) is within the protected class, (2) was

qualified to perform the job, (3) suffered an adverse employment action, and (4) has facts that give rise to an inference of discrimination." *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009).

According to KLD, Soboyede fails to state a Title VII claim because he fails to allege facts giving rise to an inference of discrimination. (Def.'s Mem. at 13.) KLD notes that the only fact that Soboyede alleges relating to his national origin is that Denzer asked him in August 2014 of the origin of his accent. In Soboyede's view, this allegation is enough to sustain his claim because KLD did not offer him a job for years after this conversation. (Pl.'s Opp'n at 22.)

The Court agrees with KLD. The allegations in the complaint simply do not give rise to an inference of national origin discrimination. Indeed, Denzer's such question in August 2014 is insufficient to plausibly state a claim that KLD refused to hire him on May 4, 2017 or thereafter based on his national origin. *See DeRoche v. All Am. Bottling Corp.*, 57 F. Supp. 2d 791, 797 (D. Minn. 1999) (noting that remarks that are "remote in time" generally do not support an inference of discrimination and collecting cases in support of this proposition). Notably, aside from the exchange Soboyede had with Denzer in August 2014, he offers no other factual allegations even suggesting that his national origin played any role in KLD's hiring decisions. For example, he makes no allegations that similarly situated employees, not within his protected class, were treated differently. *See Takele*, 576 F.3d at 838. Consequently, Soboyede fails to state a claim for Title VII discrimination based on national origin.

### 4.   MHRA

Unlike Title VII, the MHRA does not require administrative exhaustion, but it does require a plaintiff to either file an administrative charge or bring a lawsuit within one year of the alleged discrimination. Minn. Stat. § 363A.28, subd. 3. Here, Soboyede brought his initial charge on February 28, 2018. Consequently, he is barred from seeking relief with respect to any allegedly unlawful practices that occurred before February 28, 2017, including any alleged refusal to hire in connection with his interview in August 2014.

In light of the above, in the instant suit, Soboyede can only seek relief as to any alleged discrimination between February 28, 2017 and February 28, 2018 and within one year of the date he initiated this action. The Court now considers whether Soboyede states a claim for national origin discrimination under the MHRA.

The MHRA provides that "it is an unfair employment practice for an employer, because of … national origin … to … refuse to hire" or "discriminate against a person with respect to hiring …." *Torgerson*, 643 F.3d at 1043 (quoting Minn. Stat. § 363A.08, subd. 2). "The same analysis applies to both MHRA and Title VII claims." *Id.* (citing *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005); *Bahr v. Capella Univ.*, 788 N.W.2d 76, 83 (Minn. 2010).

Because the same analysis applies to both MHRA and Title VII claims, the Court finds that Soboyede fails to state a MHRA claim for the very reasons he fails to state a Title VII claim. Namely, he simply does not allege facts that give rise to an inference of national origin discrimination.

13

### C. Reprisal and Retaliation[3]

Next, the Court considers whether Soboyede states a claim for retaliation under §§ 1981 and 1982, Title VII, and the MHRA. As an initial matter, the Court notes that Soboyede appears to allege that KLD retaliated against him in two ways: (1) by discharging him after about one week of work on the July 2017 document review project because, before KLD hired him, he told KLD that he planned to file a charge of discrimination against it; and (2) by failing to hire him for other document review projects after his discharge because, after KLD discharged him, he told KLD employees that he planned to file a charge of discrimination against KLD. (*See* Compl. ¶¶ 15-19.)

#### 1.  Section 1981

Section 1981 forbids racial discrimination in the making of public and private contracts. *See* 42 U.S.C. § 1981. This statute authorizes certain retaliation claims, *Ellis v. Houston*, 742 F.3d 307, 319 (8th Cir. 2014), but they must be based on racial discrimination. *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987). Here, Soboyede does not allege that his complaints against KLD related to racial discrimination. Consequently, he has not alleged a plausible § 1981 retaliation claim, and his claim must be dismissed.

#### 2.    Section 1982

Section 1982 prohibits racial discrimination in connection with the inheritance, purchase, lease, sale, holding, and conveyance of real and personal property. *See* 42 U.S.C.

---

[3] The Court notes that Title VII and § 1981 use the word "retaliation," while the MHRA uses "reprisal." In this Order, the Court uses these terms interchangeably.

§ 1982. Although § 1982 authorizes certain retaliation claims, such a claim must involve racial discrimination. *See Peet v. Morfit*, No. 17-cv-1870 (ECT/TNL), 2020 U.S. Dist. LEXIS 120667, at \*17-18 (D. Minn. July 9, 2020). As noted above, Soboyede does not allege that his complaints against KLD related to racial discrimination. Therefore, his § 1982 claim must be dismissed.

### 3.      Title VII

As noted, Soboyede appears to allege that KLD retaliated against him by discharging him and by failing to hire him. The Court addresses these allegations in turn.

First, as explained above, a Title VII plaintiff must exhaust his administrative remedies before suing in federal court. Here, to the extent Soboyede contends that his discharge constituted retaliation based on earlier comments relating to his plans to file administrative charges, he has not exhausted that claim. Neither his February 2018 Charge nor his Amended Charge mention that he was hired and then discharged. Although a plaintiff can pursue claims in federal court "like or reasonably related to" those in an administrative charge, his Title VII retaliation claim relating to his discharge is not like or reasonably related to the refusals to hire that his alleges in his charges. *See Parisi*, 400 F.3d at 586. Consequently, Soboyede has failed to exhaust his Title VII retaliation claim relating to his first comments to KLD regarding his intent to file a charge before he was hired and discharged.

Second, the Court considers whether Soboyede states a claim for Title VII retaliation based on KLD's alleged refusal to hire him after his discharge and after he told KLD that he planned to file administrative charges. To establish a prima facie case of

retaliation under Title VII, an employee must show that: "(1) he or she engaged in statutorily protected activity, (2) the employer took adverse action against him or her, and (3) a connection exists between the two occurrences." *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991-92 (8th Cir. 2003). A "connection, or "causal link," between the two occurrences "requires evidence that 'retaliatory motive played a part in the adverse employment action.'" *Duncan v. LaSalle (Mgmt.) Grp., Ltd.*, No. 09-1574 (DSD/JJG), 2010 U.S. Dist. LEXIS 3564, at *8 (D. Minn. Jan. 15, 2010) (quoting *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002)).

Here, Soboyede fails to plausibly allege a connection between his comments to KLD and any subsequent alleged failure to hire. He only alleges that he told "certain senior employees / agents" of KLD that he planned to file administrative charges against KLD and that, thereafter, KLD never offered employment opportunities to him. (*See* Compl. ¶¶ 18-19.) He does not allege, for example, that any KLD employees made any negative comments regarding his plans to file charges, nor does he make any other allegations that would support a finding that his comments to certain KLD employees played any role in KLD's alleged refusal to hire him. Further, even if Soboyede contends that any temporal proximity between his comments and KLD's alleged refusal to hire him suffices to establish a plausible connection—it is unclear if he does—that would not save his claim because temporal proximity, alone, is insufficient to establish retaliation. *See Duncan*, 2010 U.S. Dist. LEXIS 3564, at *9 (citing *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005)). Therefore, the Court cannot reasonably infer a causal connection and dismisses the Title VII retaliation claim.

### 4.  MHRA

"Although the MHRA uses the term 'reprisal,' while Title VII uses 'retaliation,' MHRA reprisal claims are 'analyzed in the same fashion' as retaliation claims under federal employment statutes." *McLaughlin v. Children's Safety Ctrs.*, No. 12-cv-01746 (SRN/JJG), 2013 U.S. Dist. LEXIS 17364, at *28 n.8 (D. Minn. Feb. 8, 2013) (quoting *Carraher v. Target Corp.*, No. 05-2385, 2006 U.S. Dist. LEXIS 72905, at *7 n.13 (D. Minn. Oct. 5, 2006)). The Court therefore applies the Title VII retaliation framework described above.

Here, Soboyede fails to plausibly allege a connection between his first comments to KLD that he planned to file charges against it and his discharge and between the comments he made after his discharge and any subsequent alleged failure to hire.

First, he fails to plausibly allege a connection between his first comments to KLD that he planned to file charges against it and his discharge. Indeed, after Soboyede made these comments to KLD, KLD actually hired him for a document review project. Further, he does not allege that the KLD employees who ultimately decided to discharge him had any knowledge of his comments regarding a potential administrative charge, nor does he offer any other allegations suggesting that his comments before he was hired played any role in his discharge.

Second, he fails to plausibly allege a connection between the comments he made after his discharge and any subsequent alleged failure to hire for the very reasons he failed to do so with respect to his Title VII retaliation claim. (*See* Section III.C.3 *supra*.)

### D.  Punitive Damages

Finally, the Court considers Soboyede's third count, entitled "Punitive Damages," seeking an award of punitive damages under §§ 1981 and 1982, Title VII, and the MHRA. A plaintiff may seek punitive damages for violations of all four of these statutes. *See* 42 U.S.C. § 1981a(a)(1) (punitive damages available under Title VII); Minn. Stat. § 363A.29, subd. 4 (punitive damages available under MHRA); *Hunter v. Ford Motor Co.*, No. 08-4980 (PJS/JSM), 2010 U.S. Dist. LEXIS 154697, at *5 n.5 (D. Minn. Jan. 6, 2010) (punitive damages available under §§ 1981 and 1982). However, whether a plaintiff can seek an award of punitive damages depends on whether a defendant violated those statutes. In other words, a "claim" for punitive damages does not exist independently of claims that a defendant violated those statutes. Here, the Court dismisses Soboyede's §§ 1981 and 1982, Title VII, and MHRA claims for the reasons described above. Consequently, the Court dismisses Soboyede's separate claim for punitive damages under those statutes, as well.

## IV.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Defendant's Motion to Dismiss [Doc. No. 8] is **GRANTED**; and

2.   Plaintiff's Counter Motion to Dismiss [Doc. No. 15] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 23, 2021                    s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge